# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **GERARD LAYANI, _et al._,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Case No. SAG-20-420** |
| | * | |
| **ISAAC OUAZANA, _et al._,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiffs Gerard Layani ("Layani"), Britt Investment Baltimore LLC ("Britt"), Yehuda Ragones ("Ragones"), RDNA Investments LLC ("RDNA"), Kandy, LLC ("Kandy"), Henya Karniel ("Karniel"), Yonason S. Keyak ("Y.S. Keyak"), Devora A. Keyak ("D. Keyak"), 4802 Frankford Ave, LLC ("Frankford LLC"), Yosef Keyak ("Y. Keyak"), Issac Krausz ("Krausz"), and Haim Taub ("Taub") (collectively "Plaintiffs") are individuals and their wholly-owned entities who invested in various real estate properties with Defendants.  Following this Court's ruling on February 1, 2022 dismissing certain of Plaintiffs' state law claims, ECF 57, Plaintiffs filed a Second Amended Class Action Complaint for Damages and Injunctive Relief ("SAC"), ECF 59. While the factual allegations in the SAC are identical to the previous complaint, Plaintiffs have amended several of their state law claims in an effort to remedy defects that led to their prior dismissal.

Defendants Isaac and Benjamin Ouazana ("the Ouazanas"), I&B Capital Investments LLC ("I&B"), WAZ-Brothers, LLC ("WAZ-B"), WAZ-Investments, LLC ("WAZ-I"), and WAZ-Management, LLC ("WAZ-M") (collectively "Defendants") have now filed a motion to dismiss the SAC.  ECF 81.  The issues have been fully briefed, ECF 81-1, ECF 85, ECF 89, and no hearing

is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND

This Court will dispense with review of the factual background of this case, which has been set forth in detail in two prior memorandum opinions.  *See* ECF 38, 57.  In brief, Plaintiffs allege that Defendants have engaged in a wide-ranging scheme to defraud scores of investors via the sale and management of various properties in Baltimore City, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Maryland state law.  *See generally* ECF 59.

The instant motion pertains to the third iteration of Plaintiffs' complaint.  The original complaint was dismissed in full with leave to amend, as explained in an 82-page memorandum opinion by United States District Judge Ellen L. Hollander issued on March 3, 2021.  *See* ECF 38. In relevant part, Judge Hollander concluded that the court lacked federal question jurisdiction, because Plaintiffs (1) failed to allege a pattern of racketeering, as required to support their civil RICO claims, *id*. at 65-72, and (2) failed to meet the class requirements under Federal Rule of Civil Procedure 23, as required to establish jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), *id*. at 72-79.  Without a viable federal claim, Judge Hollander declined to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *Id*. at 79-81.

Following that dismissal, Plaintiffs filed a First Amended Class Action Complaint for Damages and Injunctive Relief ("FAC"), which incorporated additional allegations regarding Defendants' alleged pattern of fraudulent real estate activity.  ECF 42.  In a memorandum opinion issued February 1, 2022, this Court granted in part and denied in part Defendants' motion to dismiss the FAC.  *See* ECF 57.  With respect to the civil RICO claims, this Court determined that the new allegations in the FAC "successfully move[d] Plaintiffs' claims into the realm of civil

RICO."  *Id*. at 7.  This Court also declined to dismiss the class action claims for failure to satisfy Rule 23, finding that such a ruling would be premature prior to discovery.  *Id*. at 12-13.[1]  But this Court dismissed of several of Plaintiffs' state law counts, including their claims of fraud (Count Five), constructive fraud (Count Six), breach of contract (Counts Seven and Eight), conversion (Count Ten), and unjust enrichment (Count Eleven).  *Id*. at 13-15.  Notwithstanding the exhaustive factual allegations in the FAC, *see* ECF 42 ¶¶ 47-506, the February 1, 2022 opinion explained that Plaintiffs had failed to state with particularity which facts they intended to rely upon to support each state law claim.  ECF 57 at 13-15.  This Court also dismissed Plaintiffs' breach of partnership claim (Count Nine) with respect to Defendant WAZ-M, because that count failed to include any factual allegations regarding WAZ-M's role in the relevant partnership agreement.  *Id*. at 15.

In recognition of the extensive and detailed facts alleged in the FAC, the Court granted Plaintiffs leave to amend the FAC for the limited purpose of particularizing the state law claims referenced above.  *Id*. at 13-14, 17.  Plaintiffs subsequently filed their SAC, ECF 59, which is the subject of the instant motion to dismiss.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165-66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

---

[1] This Court also concluded that Plaintiffs had stated claims for breach of fiduciary duty (Count Twelve) and accounting (Count Thirteen) under Maryland law.  ECF 57 at 15-16.  Defendants do not expressly challenge those rulings here.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  However, a plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (quotations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Furthermore, claims that sound in fraud implicate the heightened pleading standard of Federal Rule of Civil Procedure 9(b). That rule states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under Rule 9(b), a claim that sounds in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quotation omitted). In other words, Rule 9(b) requires the plaintiff to plead "the who, what, when, where, and how of the alleged fraud" before the parties can proceed to discovery. *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation omitted). However, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Moreover, Rule 9(b) is "less strictly

applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quotation omitted).

## III.   LEGAL ANALYSIS

### A.   RICO and Class Action Claims

Defendants first ask this Court to revisit its prior ruling and conclude that Plaintiffs have failed to plead a viable RICO claim or a certifiable class under Rule 23. This Court considered and rejected similar arguments by Defendants in its previous memorandum opinion. ECF 58 at 6-13. Defendants nonetheless contend "that close scrutiny of the SAC compels further evaluation and, ultimately, dismissal" of these claims. ECF 81-1 at 22, 33. In response, Plaintiffs assert that Defendants' RICO and class action arguments are precluded by the law-of-the-case doctrine. ECF 85 at 10-14. That doctrine provides that "a legal decision, once made, should ordinarily remain the law throughout the life of the case." *Chase v. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. ELH-18-2182, 2020 WL 1914811, at *10 (D. Md. Apr. 20, 2020). While the Fourth Circuit has yet to consider whether the law-of-the-case rule applies to motions to dismiss, *id.* at *12, this Court has applied the doctrine to deny such motions when a court's prior ruling continues to apply with "equal force" to an amended complaint. *See Noel v. PACCAR Fin. Corp.*, 568 F. Supp. 3d 558, 567 (D. Md. 2021). This is generally the case when an amended complaint (1) does not include any new factual allegations and (2) is subject to the same standard of review as the original complaint. *Compare id.* (applying the doctrine to deny a motion to dismiss), *with Chase*, 2020 WL 1914811, at *13 (rejecting law-of-the-case argument when neither of the above factors were

6

present), *and Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278 at *7 (D. Md. Mar. 28, 2022) (same).

Initially, this Court disagrees with Plaintiffs insofar as they assert that the law-of-the-case doctrine "bars" consideration of Defendants' instant RICO and class action arguments.  ECF 85 at 10.  Because an amended complaint supersedes an original complaint, a motion to dismiss "wholly concerns the adequacy of the allegations contained in [the amended complaint]" and therefore requires a new determination.  *Chase*, 2020 WL 1914811, at *13.  Accordingly, while "the district court is free to follow the same reasoning," as its ruling on a motion to dismiss a previous complaint, "we do not ask whether [a new motion] is 'precluded' or 'barred' by the prior ruling." *Canty*, 2022 WL 899278 at *7 (quoting *Askins v. Dep't of Homeland Security*, 899 F.3d 1035, 1043 (9th Cir. 2018)); *see also Chase*, 2020 WL 1914811, at *13 (emphasizing that the existence of a prior ruling does not foreclose consideration of a new motion to dismiss).  Rather, when applied to a trial court's own rulings, the law-of-the-case doctrine operates "as a 'flexible tool of judicial administration,' that permits a court to balance the competing 'interests of correctness and finality.'"  *Noel*, 568 F. Supp. 3d at 566 (quoting *Chase*, 2020 WL 1914811, at *10, 13).

While Defendants' RICO and class action arguments are not precluded, the law-of-the-case authorities referenced above still support their denial.  Consistent with the limited nature of Plaintiffs' leave to amend, the SAC includes no new factual allegations that have any bearing on their RICO or class action claims.  *See* ECF 59 ¶¶ 47-506.  Moreover, the SAC is subject to the same legal standards as the FAC.  Therefore, this Court's RICO and class action rulings from the February 1, 2022 opinion apply with "equal force" to the SAC, such that denial of those portions of the instant motion would promote efficient judicial administration.  *Noel*, 568 F. Supp. 3d at 568.

Ultimately, for the reasons stated in its prior opinion, this Court continues to conclude that (1) Plaintiffs have pled sufficient facts to state a claim for civil RICO, and (2) it would be premature at this stage to consider whether Plaintiffs can satisfy their burden of establishing the class requirements set forth in Rule 23. *See* ECF 57 at 6-13. Accordingly, the Court will not dismiss the RICO and class action claims or entertain Defendants' related arguments to dismiss Plaintiffs' state law claims for lack of supplemental jurisdiction.

**B. Limitations**

Defendants next assert that certain of Plaintiffs' claims are time-barred, both by RICO's four-year statute of limitations, *see Agency Holding Corp. v. Malley Duff & Assoc., Inc.*, 483 U.S. 143, 156-57 (1987), and the three-year limitations period for claims brought under Maryland law, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiffs do not directly confront these arguments, but instead continue to assert that the law-of-the-case doctrine bars their consideration. ECF 85 at 10. This argument misconstrues the law-of-the-case doctrine for the reasons explained above. Furthermore, unlike their more general RICO and class action arguments, Defendants' limitations arguments present discrete issues which this Court has not yet had occasion to rule on. In particular, because this Court dismissed various of Plaintiffs' state law claims for lack of particularity, it did not consider whether some of the allegedly fraudulent acts underpinning those claims may fall outside the limitations period. Declining to consider Defendants' new limitations argument now would do little to promote judicial administration or secure the speedy and just resolution of this case, given that Defendants could simply reassert those arguments at subsequent stages of the litigation. *See Chase*, 2020 WL 1914811, at *13. Thus, this Court will exercise its discretion to consider Defendants' limitations arguments.

8

Courts adjudicating a Rule 12(b)(6) motion generally do not "resolve contests surrounding . . . the applicability of defenses" like statutes of limitations. *Edwards*, 178 at 243 (quotation omitted). However, a defense may be reached "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "This principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (alterations adopted). Both the Fourth Circuit and Maryland apply the "injury discovery rule," which dictates that the limitations period begins to run from "the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Windesheim v. Larocca*, 116 A.3d 954, 962 (Md. 2015) (quotation omitted); *see also Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001). A party is on "inquiry notice," meaning it should have discovered the injury, when it has "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry . . . with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Windesheim*, 116 A.3d at 962-63 (quotation omitted); *see also Caviness v. DeRand Res. Corp.*, 983 F.2d 1295, 1303 (4th Cir. 1993).

In dismissing the original complaint in this case, Judge Hollander ruled that the RICO claims regarding the marketing and sale of 314 N. Hilton Street and 726 N. Hilton Street to Plaintiffs Layani and Britt (collectively "the Layani Plaintiffs") were barred by RICO's four-year statute of limitations. ECF 38 at 60. Specifically, Judge Hollander concluded that Plaintiffs were on inquiry notice regarding Defendants' alleged misrepresentations about these properties in November 2014—more than five years before this case was filed on February 19, 2020—when

Plaintiffs alleged they received a deed for one of the properties containing a different seller and a lower recorded sale price than Defendants had represented. *Id*. at 55, 58. Plaintiffs do not challenge that ruling here. However, the SAC continues to assert Defendants' conduct surrounding the marketing and sale of these two properties as grounds for relief under state law Counts V, VI, VII, X, and XI. Because Defendants' conduct related to the marketing and sale of these properties is not actionable under RICO's four-year statute of limitations, it follows that suit must also be barred by Maryland's stricter three-year limitations period. Accordingly, Plaintiffs' state law counts are dismissed to the extent that they relate to the marketing and sale of the North Hilton Street properties. However, for the reasons explained by Judge Hollander, *see* ECF 38 at 58-59, claims relating to Defendants' allegedly fraudulent conduct in subsequently *managing* those properties, which Plaintiffs aver they did not discover in full until October 2018, may continue to move forward.

Defendants argue that Plaintiffs' claims related to other properties are also time-barred based on the facts alleged in the SAC. This Court finds these new arguments unavailing, with two exceptions: the Layani Plaintiffs' purchases of 3905 W. Forest Park Avenue and 805 N. Lakewood Avenue. The SAC alleges that in June 2015—four-and-a-half years before this suit was filed—Defendants sent the Layani Plaintiffs deeds for both properties that contained "materially different" terms of sale. ECF 59 ¶¶ 144, 230. For 3905 W. Forest Park Avenue, Plaintiffs allege they received a falsified deed reflecting a sale price $145,000, which was lower than the "package price" of $170,000 the parties had agreed to. *Id*. ¶ 143. Similarly, for 805 N. Lakewood Avenue, the Layani Plaintiffs received a deed representing that Defendant WAZ-I had conveyed title to them for $5,000, instead of the $52,000 package price the parties agreed to. *Id*. ¶¶ 225, 230. Furthermore, the SAC asserts that by recording deeds at lower prices, Defendants were able to

"fraudulently keep conveyance and recordation taxes they had collected from Plaintiffs," *id*. ¶ 144, and "lower Plaintiffs' tax basis in this property, which exposes Plaintiffs to having to pay higher conveyance taxes than they should upon selling this property," *id*. at 231.  In other words, the allegations in the SAC indicate that based on receipt of these "materially different" deeds, the Layani Plaintiffs had knowledge of facts in June 2015 that should have reasonably put them on notice that they had been injured by Defendants' fraudulent conduct around the sale of the two properties.  *See Windesheim*, 116 A.3d at 965-67 (inquiry notice is satisfied when a party "receiv[es] documents indicating that the financial transaction in which they were participating was not proceeding consistent with their expectations").

Thus, the same logic applied by Judge Hollander in dismissing the Layani Plaintiffs' claims regarding the sale of the North Hilton Street properties compels dismissal of the RICO and state law claims stemming from the marketing and sale of 3905 W. Forest Park Avenue and 805 N. Lakewood Avenue.  As with the North Hilton Street properties, however, Plaintiffs' claims which stem from Defendants' subsequent alleged fraud in *managing* those properties may move forward. *See* ECF 59 ¶¶ 148-67, 232-45.[2]  Likewise, the Court deems premature the remainder of Defendants' limitations arguments, which rely on facts or inferences that do not appear on the face of the SAC.[3]  Defendants may of course re-raise their limitations defenses if they establish a factual record during discovery to support their assertions.

---

[2] In addition, Plaintiffs may continue to cite limitations-barred facts with respect to these properties to establish a pattern of racketeering activity, as required for their RICO claims.  *See* 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" as at least two acts of racketeering activity within a ten-year period).

[3] For example, Defendants attach as an exhibit to their motion a deed recorded on December 12, 2016, reflecting Defendants' transfer of a property at 3201 Lyndale Avenue to Plaintiff Krausz for $5,000—much lower than the alleged agreed sales price of $73,000.  *See* ECF 59 ¶¶ 467-470; ECF 81-3.  But even were this Court to take judicial notice of the deed, this would not conclusively determine when Krausz, who lives in Israel, became aware that the property had been recorded at

### C.  State Law Claims

#### i.  Fraud (Count Five) and Constructive Fraud (Count Six)

This Court granted leave to Plaintiffs "to file a [SAC] for the limited purpose of stating specifically, via separate counts or via a table, the particular fraudulent representations or omissions they are relying on to support their fraud and constructive fraud claims."  ECF 57 at 14. Plaintiffs' SAC now includes a series of tables, organized by plaintiff and property, which purport to reflect nearly 180 instances of fraudulent misrepresentations or omissions of material fact by the Defendants across 17 properties.  ECF 59 ¶¶ 623-45.  Although the descriptions in these tables are in many cases duplicative of language elsewhere in the SAC, they suffice to satisfy the heightened pleading standard of Rule 9(b) by describing in detail the "who, what, when, where, and how" of the alleged instances of fraud that Plaintiffs intend to pursue.  *Kellogg Brown & Root*, 525 F.3d at 379.

Defendants offer two additional arguments for dismissal of Counts Five and Six, but both are unavailing.  First, Defendants contend that Plaintiffs have failed to plead facts showing that Defendants owed them a duty of disclosure.  In Maryland, the offense of fraudulent concealment requires the plaintiff to show that the defendant "owed a duty to the plaintiff to disclose a material fact."  *Rhee v. Highland Dev. Corp.*, 958 A.2d 385, 389 (Md. Ct. Spec. App. 2008).  Similarly, constructive fraud requires the breach of a "legal or equitable duty."  *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 893 A.2d 1067, 1095 (Md. 2006) (quoting *Md. Envtl. Tr. v. Gaynor*, 803 A.2d 512, 516-17 (Md. 2002)).  Defendants attempt to cast their relationships with Plaintiffs as consisting of "typical arms-length business transaction[s]."  ECF 81-1 at 51.  But this Court has

---

the lower price.  And while the SAC alleges that Krausz also received a false contract reflecting a lower sale price, it does not say when Krausz received that contract.  *See* ECF 59 ¶ 472.

already found that Plaintiffs have alleged facts showing a principal-agent relationship with Defendants. *See* ECF 57 at 15. And in Maryland, agency constitutes a fiduciary relationship. *See Ins. Co. of N. Am. v. Miller*, 765 A.2d 587, 593 (Md. 2001). As a result, this Court previously declined to dismiss Plaintiffs' separate state law claim for breach of fiduciary duty. *See* ECF 57 at 15. Because the facts alleged in the SAC are identical to the FAC, this Court continues to conclude that Plaintiffs have adequately pleaded that Defendants acted as their agents and, as a result, had a fiduciary duty to disclose material facts regarding the real estate transactions in question.

Defendants next argue that Plaintiffs have failed to particularly plead justifiable reliance on their misrepresentations, which is an element of a common law tort claim in Maryland. *See Gaynor*, 803 A.2d at 516 (requiring a plaintiff to show, among other things, that they "relied on the misrepresentation and had the right to rely on it") (quotation omitted). In essence, Defendants contend that facts alleged in the SAC establish "that they were on inquiry notice of allegedly being deceived," and that "warnings very early into each business relationship . . . precluded Plaintiffs from reasonably or justifiably relying on any further alleged representations or conduct of Defendants." ECF 81-1 at 52-53.

This argument fails for multiple reasons. First, even were this Court to accept Defendants' theory, this would not render unjustified Plaintiffs' reliance on allegedly fraudulent conduct that occurred at the outset of their respective business relationships with Defendants, before any "warnings" about Defendants' conduct became apparent. Second, Defendants' reference to "inquiry notice" is misplaced because, as explained above, inquiry notice is a concept associated with an affirmative statute of limitations defense. And limitations defenses are typically not resolved on a motion to dismiss. *Edwards*, 178 F.3d at 243. Finally, the Maryland Court of

13

Appeals has said that "a relationship which is built on trust and confidence generally gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 975 (Md. 2000); *see also Desser v. Woods*, 296 A.2d 586, 593 (Md. 1972) (emphasizing that a confiding party is under no duty "to make inquiry to discover that the confidential relationship has been abused during the continuation of that relationship").   Here, the Court concludes as a general matter that Plaintiffs, who have alleged a fiduciary relationship with Defendants, have adequately alleged that their reliance on Defendants' fraudulent conduct was justified.   To the extent that Defendants seek to establish that Plaintiffs were on notice of Defendants' dishonesty, such that the limitations period began to run or that Plaintiffs' reliance was not in fact justified, this is an inquiry better suited to later stages of the litigation once a fuller record has been established. *See Frederick Rd.*, 756 A.2d at 976 ("[W]hether the plaintiff's failure to discover the cause of action was due to a failure to exercise due diligence or to the defendant's concealment of his or her wrongdoing, ordinarily is a question for the jury.").

### ii.  Breach of Contract (Counts Seven and Eight)

As with Counts Five and Six discussed above, the SAC now includes tables identifying the specific contracts related to property sales (Count Seven) or property management (Count Eight) that Defendants have allegedly breached.   Nonetheless, Defendants argue that the SAC fails to provide them "sufficient notice of the specific terms of the alleged contracts, including the parties to the contract, as well as the events that Plaintiffs believe constitute Defendants breaching their obligations under the contracts."  ECF 81-1 at 53.

This Court disagrees with Defendants.   While a claim for breach of contract must allege "with certainty and definiteness facts showing a contractual obligation owed by the defendant to

the plaintiff and a breach of that obligation by defendant," *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 440 (Md. 2010) (quotation omitted), Plaintiffs have met this burden.  For each property, Plaintiffs allege facts giving rise to a contractual obligation, including the basic terms of each agreement and the parties involved.  Plaintiffs then assert, with respect to each alleged contract, that Defendants, "breached the agreement . . . by unfairly interfering with the Plaintiff's right to receive the benefits of this agreement, and by acting in bad faith by engaging in the fraud and constructive fraud acts outlined in Counts Five and Six above for this property and plaintiff." *See, e.g.*, ECF 59 ¶¶ 664-4, 665-5, 666-4, 681-3, 682-3.  At a minimum, Plaintiffs have adequately alleged that Defendants, through the fraudulent acts detailed in Counts Five and Six, breached the implied covenant of good faith and fair dealing that Maryland law recognizes in each contract.  *See Clancy v. King*, 954 A.2d 1092, 1103 n.20 (Md. 2008) ("In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 188 N.E. 163, 167 (N.Y. 1933) (alteration adopted))).  As a result, this Court will not dismiss Plaintiffs' breach of contract claims, except insofar as they rely on the limitations-barred actions discussed above relating to the sale of certain properties to the Layani Plaintiffs.  *See supra* at 8-11.

### iii.  Breach of Partnership Agreement (Count Nine)

As with the FAC, this Court once again concludes that the SAC fails to state a claim against Defendant WAZ-M for breach of the August 29, 2017 partnership agreement.  That agreement is attached as an exhibit to the SAC, and therefore may be properly considered in resolving Defendants' 12(b)(6) motion.  *See Goines*, 822 F.3d at 166 (stating that courts at the motion to dismiss stage may properly consider documents that are "explicitly incorporated into the complaint

by reference and those attached to the complaint as exhibits" (citations omitted)).  The agreement sets forth a partnership between Plaintiff Ragones and Isaac Ouazana to assume 50 percent ownership each in four properties.  ECF 59-7.  Ragones and Isaac Ouazana are the only signatories to the agreement.  *Id*.  The SAC nonetheless avers that WAZ-M is "an implied party to or beneficiary of the Partnership Agreement," which Plaintiffs assert includes an "implied agreement" for WAZ-M to manage the four properties.  ECF 59 ¶¶ 693-94.  Because contract interpretation is generally a question of law, *see Auction & Est. Representatives, Inc. v. Ashton*, 731 A.2d 441, 444 (Md. 1999), these assertions constitute legal conclusions that this Court need not accept as true.  *See Papasan*, 478 U.S. at 286.

Furthermore, the plain language of the partnership agreement is fatal to Plaintiffs' attempt to fashion a claim against WAZ-M.  *See Goines*, 822 F.3d at 167 ("When the plaintiff attaches or incorporates a document upon which his claim is based, . . . crediting the document over conflicting allegations in the complaint is proper.").  Plaintiffs primarily rely on a line at the end of the contract which states that "[i]f any of the 4 properties above sell to a different buyer more than market value, [WAZ-M] will have the option not to be the property manager."  ECF 59-7.  But this line fails to establish a contractual obligation owed by WAZ-M to Ragones *arising out of the August 29, 2017 partnership agreement*.  To the contrary, the plain language of the partnership agreement unequivocally states that there are only two parties to that contract:  Ragones and Isaac Ouazana. *See* ECF 59-7 ("I, Yehuda Ragones, . . . agree and acknowledge that I am partners with Isaac Ouazana, . . . 50% each party ownership in the below properties[.]")  "Where the language of the contract is unambiguous, its plain meaning will be given effect."  *Ashton*, 731 A.2d at 444 (quotation omitted); *see also id*. ("[T]he clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean").  As a result,

this Court will dismiss Plaintiffs' claim for breach of the August 29, 2017 agreement as it relates to WAZ-M.

### iv. Conversion (Count Ten)

Defendants seek dismissal of Count Ten on the grounds that money cannot be the subject of a conversion claim. In Maryland, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim of conversion." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 966 (Md. 1999). An exception to this rule exists "when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Id*. This exception applies to funds that were actually segregated, as well as funds that "should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." *Id*. (quotation omitted); *see also Franklin Am. Mortg. Co. v. Sanford Title Servs., LLC*, Civ. No. RDB 19-920, 2011 WL 310469, at *3 (D. Md. Jan. 26, 2011). In *Franklin*, the court declined to dismiss a conversion action where the plaintiff alleged that the defendant converted and misappropriated various funds which had been wired to the defendant for the purpose of paying off mortgage and closing costs on several specific real estate transactions. *Id*. at *3-4.

The Court finds that this case is sufficiently analogous to *Franklin*. Specifically, the gravamen of Plaintiffs' Count Ten is that Defendants converted various funds which were sent to them by Plaintiffs to finance the purchase and renovation of specific properties, along with rental payments and other funds collected by Defendants pursuant to the subsequent management of those properties. *See* ECF 59 ¶¶ 708-20. The SAC further alleges that these funds "were intended for a particular purpose, and . . . were to be segregated from Defendants' funds." *Id*. ¶ 709. Construing the SAC in the light most favorable to Plaintiffs, Count Ten states a claim for conversion of particular money that falls within the exception described in *Allied Investment*. *See*

*Franklin*, 2011 WL 310469 at *3-4.  Therefore, this Court will not dismiss Count Ten, except as it relates to the time-barred claims discussed above.  *See supra* at 8-11.

### v.  Unjust Enrichment (Count Eleven)

This Court will not dismiss Plaintiffs' claim for unjust enrichment, which has been sufficiently particularized in the SAC.  Specifically, Count Eleven now incorporates by reference the detailed tables from Count Ten, which set forth the specific real estate transactions that are the subject of Plaintiffs' conversion claim.  Furthermore, as discussed in this Court's February 1, 2022 ruling, Plaintiffs are permitted by the Federal Rules of Civil Procedure to plead an alternative claim for unjust enrichment, even though they may not ultimately recover both contractual and semi-contractual remedies.  *See* Fed. R. Civ. P. 8(d)(2); *Jones v. Koons Automotive Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010) (deeming it premature to dismiss unjust enrichment claims pled in the alternative at the motion to dismiss stage).  Accordingly, Plaintiffs' unjust enrichment claims may proceed, except insofar as they are based the marketing and sales conduct described above that falls outside the limitations period.  *See supra* at 8-11.

## IV.  CONCLUSION

For the reasons described above, Defendants' motion to dismiss the SAC, ECF 81, will be GRANTED in part and DENIED in part.  Plaintiffs' RICO and state law claims are dismissed to the extent that they are based on the marketing and sale to the Layani Plaintiffs of the following properties: 314 N. Hilton Street, 726 N. Hilton Street, 3905 W. Forest Park Avenue, and 805 N. Lakewood Avenue.  In addition, Count Nine is dismissed insofar as it purports to state a claim against WAZ-M.  The remainder of the motion to dismiss is denied.  A separate order follows.

Dated: October 20, 2022                                        _____/s/_____
                                                                              Stephanie A. Gallagher
                                                                              United States District Judge