# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GERARD LAYANI, et al.

Plaintiffs,

v.

ISAAC OUAZANA, et al.

Defendants.

Case No. 1:20-cv-00420-SAG

## PLAINTIFFS' MOTION FOR SANCTION OF DEFAULT

Table of Contents

I.     ISSUES .................................................................................................................. 1

II.    SUMMARY ........................................................................................................... 1

III.   BACKGROUND ................................................................................................... 2

   A.    Defendants knowingly filed a sham affidavit for Mr. and Mrs. Assous in which
   they forged Mr. Assous' Docusign ("dotloop") signature. ........................................... 3

   B.    Defendants attempted to deceive this Court, the Baltimore City Circuit Court,
   and the EPA about divesting management of properties that they do not own...................... 4

   C.    Defendants suborned perjury of potential class member Avraham Dermer. ...... 9

   D.    Defendants tampered with witnesses and victims in this proceeding. ............... 10
       1)    Defendants used intimidation to attempt to dissuade a witness for Plaintiffs, Mr.
       Philippe Lerner from providing testimony about their fraudulent business practices       10
       2)    Defendants used intimidation and corrupt persuasion to attempt to prevent victims
       from participating in these proceedings.                                                12
             a)   Haim Taub ........................................................................................ 12
             b)   Yosef Keyak....................................................................................... 12
             c)   Mordechai Gelber ............................................................................. 13
             d)   Potential Class Members.................................................................... 14

   E.    Defendants failed to answer discovery at all. ...................................................... 14

   F.    Defendants' Counsel filed a plagiarized brief in violation of the rules of
   professional conduct. ................................................................................................... 14

IV.    LEGAL STANDARD ........................................................................................... 15

V.     LEGAL ARGUMENT .......................................................................................... 16

   A.    The first two factors -- wrongdoer culpability and client versus attorney
   blameworthiness -- weigh in favor of defaulting because defendants are culpable for their
   corrupt and deceitful acts and their counsel's filing a plagiarized brief also damaged the
   judicial process. ........................................................................................................... 16

   B.    The third and fourth factors - prejudice to the judicial process and victims -
   also weigh in favor of defaulting Defendants because their corrupt and deceitful acts and
   their counsel's filing of a plagiarized brief damaged the judicial process, made a mockery
   of the judicial system and weakened its credibility and ability to provide justice................ 18

**C.    The fifth factor -- availability of lesser sanctions -- also weigh in favor of defaulting defendants because the seriousness of defendants' misconduct demands application of the strongest penalty available.** .......................................................................... **19**

**D.    The sixth factor – the public interest -- also weighs in favor of defaulting defendants because the nature of defendants' misconduct would compromise the public's confidence in the courts' ability to adjudicate disputes unless this conduct is deterred.** ...... **21**

**VI.   CONCLUSION** ......................................................................................................... **21**

## Cases

*Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, (1st Cir.1989) ............................................................ 20

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991) ............................................................... 15

*Dewitt v. Ritz, Civil Action No. DKC 18-3202*, pp. 5-7 (D. Md. Mar 10, 2021) ............. 15, 19, 20

*Eppes v. H.E. Snowden*, 656 F.Supp. 1267 (E.D.Ky.1986) ......................................................... 20

*Green v. Mayor & City Council of Baltimore*, 198 F.R.D. 645, 647 (D.Md. 2001) .................... 19

*Hartford Ins. Co. v. Am. Automatic Sprinkler Sys., Inc.,* 201 F.3d 538, 543-44 (4th Cir. 2000) . 15

*In re Jemsek Clinic, P.A.*, 850 F.3d 150, 158 (4th Cir. 2017) ...................................................... 15

*In re Kunstler*, 914 F. 2d 505, 519 (4th Circuit 1990) ................................................................. 17

*Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992) ........................................................................ 20

*Projects Mgmt. Co. v. Dyncorp Int'l LLC,* 734 F.3d 366, 373 (4th Cir. 2013). ........................... 15

*Rangarajan v. Johns Hopkins Univ*., 917 F.3d 218, 229 (4th Cir.), cert. denied, 139 S. Ct. 2762,
    204 L. Ed. 2d 1137 (2019) ..................................................................................................... 21

*Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001) ............................................. 15

*United States v. Shaffer Equipment Co., 11* F.3d 450, 461 (4th Cir. 1993)............................. 1, 15

## Rules

Fed. Civ. Pro. Rule 11........................................................................................................... 17

## I.        Issues

This motion to impose the sanction of default boils down to one issue:

- The sanction of default requires evaluating: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of lesser sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. Defendants acted directly and consistently to derail this litigation by filing a sham affidavit on which they forged the signature of the affiant, Mr. Assous. They lied to this Court, to the Baltimore City Circuit Court and to a government agency (EPA), by giving conflicting versions of the extent of their business activities to suit their litigation needs of the moment. They suborned perjury from a victim, Mr. Avraham Dermer, for use in the pending motion for class certification. They tampered with witnesses and victims.  They failed to answer any discovery at all. Finally, their attorney violated the Maryland rules by filing a plagiarized brief repeating many irrelevant arguments. Therefore, should the Court impose the sanction of default?

## II.        Summary

The Court should impose the sanction of default because evaluation of the six factors required in *United States v. Shaffer Equipment Co., 11* F.3d 450, 461 (4th Cir. 1993), make it clear that this is the appropriate sanction for the Defendants' and their counsel's extensive pattern of litigation abuse that includes: (a) filing a sham affidavit on which Defendants forged the signature of the affiant, Mr. Assous; (b) lying to this Court, to the Baltimore City Circuit Court and to a government agency (EPA), by giving conflicting versions of the extent of their business activities depending on their litigation needs of the moment; (c) suborning perjury from one of their victims, Mr. Avraham Dermer, for use in the pending motion for class certification; (d) intimidating witnesses and class members;(e) failing to answer any discovery at all; and finally (f) their attorney's violation of the Maryland rules relating to the filing of a plagiarized brief that wasted the Court's and Plaintiffs' time and resources with a multitude of irrelevant arguments. The first two factors -- wrongdoer culpability and client versus attorney

1

blameworthiness -- weigh in favor of defaulting because defendants are evidently culpable for their corrupt and deceitful acts. Moreover, because their counsel is clearly not inexperienced or incompetent, the number and magnitude of irrelevant arguments that lack a basis in law or in fact in *this* case contained in his filing of a largely unmodified plagiarized brief suggests willfulness and improper purpose.  The third and fourth factors - prejudice to the judicial process and victims - also weigh in favor of defaulting Defendants because their corrupt and deceitful acts and their counsel's filing of a plagiarized brief caused great prejudice to the judicial process by making a mockery of this Court and of the judicial system and weakened its credibility and ability to provide justice. The fifth factor -- availability of lesser sanctions -- also weigh in favor of defaulting defendants because the seriousness of defendants' misconduct in deceiving the Court in several ways, including by filing a fake affidavit with a forged signature demands application of the strongest penalty available. The sixth factor – the public interest -- also weighs in favor of defaulting defendants because the nature of defendants' misconduct would compromise the public's confidence in the courts' ability to adjudicate disputes unless this conduct is deterred.  At bottom, Defendants' transgressions are so extreme as to "forfeit [their] right to use the process" and to warrant the Court's imposition of the sanction of default.

### III.    Background

The factual background of this case was summarized in three memorandum opinions and is incorporated herein by reference. *See* ECF 38, 57, 91. This motion, however, addresses Defendants' litigation abuse which, despite the Court's warnings admonishing Defendants to participate in good faith in these proceedings (ECF 38, pp. 25-34; ECF 63), includes: (a) knowingly filing a sham affidavit for Mr. and Mrs. Assous on which Defendants forged Mr. Assous' DocuSign "dotloop" signature; (b) lying to this Court, to the Baltimore City Circuit

Court and to a government agency (EPA), by giving conflicting versions of the extent of their business activities to suit their litigation needs of the moment; (c) suborning perjury from one of their victims, Mr. Avraham Dermer, for use in the pending motion for class certification; (d) repeatedly tampering with witnesses and class members; (e) failing to answer any discovery; and finally (f) their attorney's violation of the Maryland rules by filing a largely unmodified plagiarized brief that wastes the Court's and Plaintiffs' time and resources with many irrelevant arguments, suggesting an improper purpose.

A. **Defendants knowingly filed a sham affidavit for Mr. and Mrs. Assous in which they forged Mr. Assous' Docusign ("dotloop") signature.**

With their opposition (ECF 131) to the motion to certify a class, defendants filed an affidavit (ECF 131-3, p. 5) dated 2/5/2024 purportedly from David and Lea Assous which Defendants know to be a fraudulently document because Mr. Assous' signature was forged by them. Mr. Assous did not sign this affidavit and had no knowledge of its existence or of the fact that Defendants filed it until undersigned counsel emailed a copy of it to Mr. Assous on 3/29/2024. *See Exhibit 1, Affidavit of David Assous, Exhibit 2, Affidavit of Lea Assous.* Mr. Assous did not see or approve this document before it was filed. *Id.* This 2/5/2024 affidavit appears to have been filed with the Court in violation of 18 U.S.C. §1623(a) (False declarations before grand jury or court).[1] In their reply (ECF 134), Plaintiffs noted that this affidavit is both defective (since it was offered for both David and Lea Assous but purportedly signed only by

---

[1] This U.S. Code section states: "(a)Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both."

David and not by Lea Assous) and perjured because contrary to Mr. Assous' declaration that he

has "no issues with Isaac or Benjamin, and [has] no intention of being part of any lawsuit against

them," Mr. Assous repeatedly contacted undersigned counsel to state the exact opposite. By

filing this affidavit, Defendants exposed Mr. Assous to the law's penalties for perjury, without

batting an eye.  It turns out that, after contacting Mr. Assous, the affidavit in question is not

perjured but is instead, a fraudulent document bearing a forged signature. Mr. and Mrs. Assous

provided separate affidavits witnessed by a French notary confirming that the signature affixed

to this 2/5/2024 affidavit (ECF 131-3, at p. 5) was not put there by Mr. Assous, and that neither

he nor his wife had any knowledge of the existence of this affidavit and of the fact that

Defendant had filed it with their opposition (ECF 131). This explains the discrepancy between

the 2/5/2024 affidavit and Mr. Assous' prior statements to undersigned counsel in emails and in

the forms he filed online on counsel's Clio database.[2] Therefore, Defendants knowingly filed a

sham affidavit in this Court, knowing that it contains false material or declaration including a

forged signature for the affiant, Mr. Assous, for the purpose of using this fraudulently fabricated

evidence to support their opposition to the motion for class certification.


**B.** **Defendants attempted to deceive this Court, the Baltimore City Circuit Court, and the EPA about divesting management of properties that they do not own.**

Defendants provided conflicting versions of their business activities to this Court, to the

Baltimore City Circuit Court, and to the U.S. Environmental Protection Agency (EPA), changing

---

[2] Undeterred by Plaintiffs' submission with their reply (ECF 134) of the Clio forms Mr. Assous filled out and the emails he sent to undersigned counsel, on 3/11/2024, Defendant Benjamin Ouazana fraudulently abused Mr. Assous' trust, by tricking Mr. Assous, who is not fluent in English, into signing without first reading it, a new affidavit where Mr. Assous unknowingly perjured himself by stating that he was not the person who sent the emails and filled out the Clio forms produced by Plaintiffs. *See Exhibit 1, Affidavit of David Assous, pp. 3-4.*

versions to suit their litigation objective of the moment.  As further discussed below, in their

February 7, 2024 (ECF 131) opposition to the motion for class certification, Defendants oppose

numerosity under Fed. Civ. Pro. Rule 23(a)(1), by claiming that they still manage only 39

properties which they own because since 2018 they stopped managing all 250 properties they do

not own and provided a list of such properties to EPA (ECF 131-2). By contrast, a few short

months ago, in August and September 18, 2023, for the purpose of avoiding paying the

settlement they entered into in this Court (Civil Action No. 1:21-cv-1863-DLB) with another

victim, Mr. Olivier Nataf, Defendants Benjamin and Isaac Ouazana testified under oath to the

exact opposite: i.e., Defendants own <u>no</u> properties and only manage properties <u>owned by clients</u>.

*See Exhibit 3, Isaac Ouazana 8/2/2023 Testimony Transcript Excerpt; Exhibit 4, Benjamin*

*Ouazana 9/18/2023 Testimony Transcript Excerpt*.

In their February 7, 2024 opposition to the motion for class certification (ECF 131) filed

in this Court, Defendants stated:

> **Since 2018** the Defendants have taken steps to **only manage properties that they also own**, divesting themselves of management responsibilities for over 250 properties. **Defendants now own and manage approximately 39 properties**. *United States Environmental Protection Agency Audit Report* of September 06, 2023, page four, attached as "Exhibit A". Plaintiffs have failed to present any admissible evidence that a class should be certified due to numerosity.
>
> *Opposition* (ECF 131), p. 6.

By contrast, a few months ago, on 8/2/2023 and 9/18/2023, during a judgment debtor

examination held in the Baltimore City Court in *Nataf v. Ouazana*, Case No. 24-c-22-004272,

Defendants Isaac and Benjamin Ouazana testified, that they were employees of Defendant WAZ-

Management, <u>which manages only client properties</u>, and that none of the Defendants in that case

--which happen to be the same Ouazana Defendants in this case-- owned any real properties.

Specifically, Defendant Isaac Ouazana testified on August 2, 2023 as follows:

Q. At what business are you currently employed?

A. WAZ-Management.

Q. What is your business address?

A. 3503 Glen Avenue.

Q. In Baltimore?

A. Yes.

Q. And what is your job title at WAZ-Management?

A. Property manager.

Q. **What are your duties as property manager for WAZ-Management?**

A. **Managing properties <u>on behalf of clients</u>.**

Q. What kind of properties?

A. Whatever residential.

Q. Are they multi-family residential properties?

A. No. A residential home.

Q. There are no apartment buildings that you manage through WAZ-Management?

[p.14] A. No.

Q. How long have you been -- how long have you been at -- in that position with WAZ-Management?

A. Since we opened in I think 2014.

Q. What is your current salary or pay at WAZ-Management?

A. I receive a paycheck every two weeks.

Q. And what is the amount of your paycheck?

A. $1,072 average.

Q. Are you on a salary at WAZ-Management?

A. Yes.

Q. Do you also earn any kind of commission or bonus?

A. No.

Q. Do you work at any other jobs or businesses?

A. No.

Q. Do you receive income from any other source?

A. No.

6

*See Exhibit 3, Isaac Ouazana 8/2/2023 Testimony Transcript Excerpt, pp. 13-14.*

Likewise, Defendant Benjamin Ouazana testified on 9/18/2023:

> Q. Where do you work?
>
> A. WAZ-Management.
>
> Q. And is the address 3503 Glen Avenue?
>
> A. Correct.
>
> Q. What's your title there?
>
> A. Manager.
>
> Q. What are your job duties as manager?
>
> A. Management, regular management. Yes.
>
> Q. Management of what?
>
> A. Property.
>
> Q. How many properties does WAZ-Management currently manage?
>
> A. I don't have an exact number by heart.
>
> Q. Give me an estimate.
>
> [p.9]  A. In the tens.
>
> Q. Are they all in Baltimore City?
>
> A. Yes. Correct. Baltimore, yeah. I mean, yeah. Only in those -- believe so.
>
> MS. WIMER: How many (inaudible)?
>
> MR. FLETCHER: In the tens.
>
> Q. How long have you been in that role?
>
> A. Oh, years. I don't have the exact date but years, more than five.
>
> Q. Okay. What's your current pay in that job, your compensation?
>
> A. It's about $1,000 every other week.
>
> Q. Your 2021 tax return shows $19,750 in income. What was the
> source of that income?
>
> A. That's the paycheck.
>
> Q. From WAZ-Management?
>
> A. Correct.
>
> ***
>
> Q. So WAZ-Management manages a number of properties, correct?

A. Very few (inaudible).

Q. Okay. But the company received -- does the company receive a management fee for managing those properties?

A. It depends. It depends.

Q. What does it depend on?

A. **Depends on that <u>agreement with the owner</u>. Depends.**

*See Exhibit 4, Benjamin Ouazana 9/18/2023 Testimony Transcript Excerpt, pp. 7-10.*

Defendant Benjamin Ouazana further testified that Defendant **<u>WAZ-Brothers LLC</u>** *used to* own properties, implying it no longer does. *Id., p. 16-17* ("Q. What is the business of WAZ-Brothers LLC? A. So we **used to** have few small, single properties. That's what it was. Q. You say you ***used to*** have. What's the current status of the properties that were owned by WAZ-Brothers? A. I have to double check. It's on the tax return, whatever it's there. Q. Well, do you know whether WAZ-Brothers continues to own any property? A. I don't -- I don't know. It's on the tax return, sir.") He further testified that Defendant **<u>WAZ-Investments LLC</u>** is closed and no longer owns any property. *Id. p. 24* ("Q. what was the business of WAZ-Investments LLC? A. We **used to** have rental properties. Q. You said you rent out properties? A. We ***used to*** have rentals – Q. ***Used to***. A ***Used to*** (Inaudible). Q. And what's the current status of WAZ-Investments LLC? A. **Done. It's closed. Nothing**. Q. When did the company close? A. I don't know.") He also testified that **Defendant I&B Capital Investments** sold all properties to pay debts and no longer owns any real estate. *Id., p. 25* ("Q. what properties are currently owned or managed by **<u>I&B Capital</u>**? A. Nothing. Q. What happened to I&B? A. all the property was sold to pay, you know, debts. I don't know. No more properties.")

In short, contrary to the version they used in this Court on February 7, 2024, to oppose class certification, which is that since 2018 Defendants only manage 39 properties that they own and no longer manage the 250 properties belonging to their clients, Defendants' sworn testimony

in the Baltimore City Circuit Court in August and September 2023, was that they own no properties and manage only "tens" of client properties from which they derive all their income. These two versions are evidently mutually incompatible and indicate that Defendants have attempted to deceive these two courts and the EPA by changing their statements depending on their litigation objective of the moment.

### C.  Defendants suborned perjury of potential class member Avraham Dermer.

Defendants corruptly obtained false testimony from Mr. Avraham Dermer, which they used in their opposition (ECF 131) to the motion to certify a class.[3] Suborning perjury means to persuade or induce someone to lie under oath in a legal proceeding. 18 U.S.C. Code § 1622 – Subornation of perjury ("Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both."). According to Mr. Harlap, who is Mr. Dermer's partner in the purchase of an apartment sold by Defendant Isaac Ouazana which turned out to have the address of a cemetery, Defendant Isaac Ouazana contacted Mr. Dermer after the filing of Plaintiffs' motion for class certification in order to make Mr. Dermer a proposition that would be hard for him to refuse given his financial situation, namely: (a) to join Defendants' side by agreeing to sign a false affidavit for use in this case and get a financial benefit; or (b) remain on plaintiffs' side and get no financial relief as "the Ouazanas will drag [this] process in court 5 more years and that he will file bankruptcy in the end and that we will not get a penny." *See Exhibit 5 (ECF 134-5), Affidavit of Avraham Harlap, and attached Translation of Contract between Isaac Ouazana, Avraham*

---

[3] Undersigned counsel has not yet been able to contact Mr. Da Costa to determine whether Defendants suborned his false affidavit as explained in Plaintiffs' reply (ECF 134).

*Dermer and Avraham Harlap.*[4] In short, Defendant Isaac Ouazana suborned Mr. Dermer's perjury, inducing him to sign, in order to avoid the total loss of his investment, a false affidavit which Defendants submitted with their opposition to the Motion to certify class.

**D.  Defendants tampered with witnesses and victims in this proceeding.**

Defendants tampered with a key witness for Plaintiffs: Mr. Philippe Lerner. They also used financial inducements and threats to attempt to prevent numerous victims from asserting claims in these proceedings.  Generally, witness tampering means attempting to dissuade a witness from testifying at a trial or other proceeding, or attempting to prevent a victim or witness from making a complaint or police report. 18 U.S. Code § 1512 - Tampering with a witness, victim, or an informant.

1) *Defendants used intimidation to attempt to dissuade a witness for Plaintiffs, Mr. Philippe Lerner from providing testimony about their fraudulent business practices*

Earlier in these proceedings, Defendants Isaac and Benjamin Ouazana threatened a key witness, Philippe Lerner, in order to dissuade him from providing information about their fraudulent business practices to the plaintiffs and from testifying against them in this case. Indeed, as described in a sanctions motion (ECF 30) filed earlier, Defendants threatened Mr. Lerner, by attacking his family, his business, and his social standing, as a reprisal for giving information about their fraud to Plaintiffs. Defendants' witness tampering campaign against Mr. Lerner is laid out in detail in Judge Hollander's opinion dismissing without prejudice the original

---

[4] Defendants make the surprising argument that the contract is incorrect in that it states that the property sold to Messrs. Dermer and Harlap is 4035 Frederick when it should say 4235 Frederick. As demonstrated in Plaintiffs' reply (ECF 134) in support of the motion to certify class, this is yet another lie because the Maryland land records make clear that Defendant I&B Capital sold 4235 Frederick to another party, DCB Invest LLC (i.e. Laurent Da Costa and David Brauman), who in turn sold it to yet another party. In short 4235 Frederick was never sold to Messrs. Dermer and Harlap. And 4035 Frederick, the address on the contract refers to a cemetery.

complaint. ECF 38, pp. 25-38.  Although Judge Hollander denied the motion without prejudice, she noted that "the averments are troubling." ECF 38, at 34.  Judge Hollander further states: "To be sure, plaintiffs present assertions of conduct by defendants that are of concern to the Court. Lerner has averred that he possesses information about defendants' "fraud," and that he has provided plaintiffs with that information. ECF 30-1, ¶ 6. The affidavits from Lerner, Rabbi Weiss, and Hill indicate a persistent and pernicious effort by the Ouazanas to harass, threaten, or intimidate Lerner for sharing information with plaintiffs about defendants' business practices. *Defendants are not entitled to harass, intimidate, or threaten Lerner in an effort to keep him from sharing information with plaintiffs about defendants' business practices*." ECF 38, at 32. According to Mr. Lerner, Defendants' actions against him surge every time he provides a victim any information or his name is mentioned in these proceeding, which has had a chilling effect on him. *See Exhibit 6, 7/20/20 email from P. Lerner to David Brauman and Laurent Da Costa (*"David & Laurent, Bien sûr je veux aider , mais comme vous le savez, chaque fois que vous attaquez waz, il vient après moi. la semaine dernière, il m'a fallu 2 jours pour comprendre pourquoi il s'est réveillé, jusqu'à ce qu' Eric confirme votre lettre. J'ai actuellement demandé de l'aide à l'avocat du recours collectif, car tous les autres avocats de la ville ne veulent pas les toucher comme vous vous en souvenez lorsque vous avez essayé. SVP donnez-moi quelques jours jusqu'à ce que nous voyions comment WAZ répond, alors je vous fournirai ce dont vous avez besoin. Bien sûr, Clear Sky a tous les documents, violations, citations, permis de séjour illégal." [Google Translation: "David & Laurent, Of course I want to help, but as you know, every time you attack waz, he comes after me. Last week it took me 2 days to figure out why he woke up, until Eric confirmed your letter. I have currently asked the class action lawyer for help because every other lawyer in town won't touch them like you remember when you tried. Please

give me a few days until we see how WAZ responds, then I will get you what you need. Of course, Clear Sky has all the documents, violations, citations, illegal residence permits."] *See also Exhibit 7, (128-10) 1/20/2024 Affidavit of P. Lerner regarding continuing harassment and intimidation, p. 3* ("6. By way of background, I became concerned with the defendants' practices and have tried to help right the many wrongs occasioned by the defendants in this case by providing information to the plaintiffs herein. As a result, the Defendants have engaged in a systematic campaign to intimidate me in order to get me to stop providing damaging information about them I witnessed. I have offered a statement to the Court to this effect two years ago.")

2) *Defendants used intimidation and corrupt persuasion to attempt to prevent victims from participating in these proceedings.*
   a) Haim Taub

The Court will recall that Mr. Taub asked to be removed from the case as a named party because he feared for his life due to the retaliation he expected –or was threatened with—by the Defendants. *See ECF 114, Consented Notice of Voluntary Withdrawal filed on behalf of Haim Taub.*

   b) Yosef Keyak

Defendant Isaac Ouazana asked his agent in Israel, Mr. Itamar Shaked, to contact Plaintiff Yosef Keyak after the filing of the instant motion in order to induce him and his family to withdraw from this case. *See Exhibit 8, Affidavit Yosef Keyak and attached Transcript of recorded conversation between Yosef Keyak and Ouazana Agent Itamar Shaked.* This transcript is remarkable because it clearly states that Defendant Isaac Ouazana's motivation in paying off named parties is interfering with this litigation by trying  "to get them off this case." The fact that he is doing so in time to affect the outcome of the motion to certify a class is also significant. The transcript further describes Defendant Isaac Ouazana's scheme for circumventing the prohibition from contacting parties that he knew was a line he could not cross. "Itamar Shaked:

I'm calling you because we didn't talk for a while, he contacted me, Issac, from Baltimore.  I know that recently these last couple of years, a lot of people have joined a court case against him, also in the USA, also around the rest of the world and also here in Israel. He actually, what I understand that he is trying to do is to pay people, I mean to see what the people are suing for, what they want, and <u>pay them off so they leave the lawsuit</u>. * * * So he [Defendant Isaac Ouazana] told me "talk to the Kayak family, and figure out what they want, what they are saying, I have an amount of money" I understand that he doesn't have millions of dollars for the lawsuit in the US. So I think this creates an opportunity for the smaller (victims of the) lawsuit, to try to get them off his case. * * * You didn't talk to me all these years so I'm calling to work out a deal between you two [Ouazanas and Keyaks] <u>because from what I understand from him [Isaac Ouazana], he can not speak directly to you</u> but I don't really understand how it works or where the court stands... You don't have a reason to talk to me if you think that I'm a criminal, I agree with you. I agree with you. It's your right to think like that and I don't have a way to stop you from thinking that <u>besides the fact that tens if not hundreds of investors from all over the world fell for his [Isaac Ouazana's] scam</u>…. " *Id.*

           c)     <u>Mordechai Gelber</u>

Mr. Gelber was contacted by Defendant Isaac Ouazana who told him that he must stop his involvement in this lawsuit and if he did so, Defendants would return all the money he lost as a result of the fraud. Defendant Isaac Ouazana also told Mr. Gelber that "if [he] did not stop being involved in the case and kept providing information and testimony for the plaintiffs' side, he would treat [Mr. Gelber] like the other people who became involved in the lawsuit and he would make sure [Mr. Gelber] gets nothing." *See Exhibit 9 (ECF 128-2), Affidavit of Mordechai Gelber.*

13

d)      Potential Class Members

Defendants have interfered with Plaintiffs' efforts to reach out to potential Class

Members, complicating the conduct of the litigation for the Plaintiffs' side, and making

discovery all but impossible because they have threatened Class Members to dissuade them from

making themselves known to the Plaintiffs or from offering testimony about the Defendants'

conduct. As a result, most of the parties who contacted Plaintiffs' side to inquire about joining

the litigation have asked that their names not be disclosed for fear of the Defendants' retribution

without some form of court protection.

**E.  Defendants failed to answer discovery at all.**

Plaintiffs propounded barebones discovery requests on 11/22/2023 and 11/29/2023,

seeking basic information and records from Defendants about their handling of plaintiffs' funds.

As of the date of this motion, Defendants did not answer discovery at all. *See Exhibit 10,*

*Plaintiffs' Discovery requests*.

**F.  Defendants' Counsel filed a plagiarized brief in violation of the rules of professional conduct.**

Defendants' counsel filed a plagiarized opposition brief (ECF 131) without attribution to

the source, which amounts to "conduct involving dishonesty, fraud, deceit or misrepresentation"

towards the Court. As noted in Plaintiffs' reply (ECF134) in support of the motion to certify

class, Defendants' brief copies *verbatim* (down to using even the same formatting) almost in its

entirety the opposition in *Todd v. Xoom* without attribution to the source in violation of Maryland

rule of professional conduct 19-308.4(c). *Compare* Def.'s Br. (ECF 131) at 1-8, 10-13, 13-17,

17-20, 21-22, 23-24, 24-26, 27-28, 30, n.1, n. 2, n. 3, n.4, with *Exhibit 134-1, Brief of the*

*Defendants*, *ECF 167, Opposition to motion for class certification*, filed 01/13/20, *Todd v. Xoom*

*Energy Md., LLC*, Civil Action No. 8:15-cv-154 (GJH). Because the plagiarized brief in *Todd v.*

14

*Xoom* opposed certification of a class based on a variety of tort and statutory claims including contracts, fraud, negligence, as opposed to the present class which does not, Defendants' brief (ECF 131) responds to arguments that were not made in the Plaintiffs' (ECF 128) motion for class certification while failing to address most of the arguments made.  In the interest of brevity, Plaintiffs' arguments regarding this plagiarizing, which were made in the Plaintiffs' reply (ECF 134) in support for the pending motion to certify a class are incorporated here. *See ECF 134 pp. 2-4.*

### IV.        Legal Standard

This motion raises one broad issue: whether this Court should use its inherent power to enter a default as a sanction against Defendants who have lost the right to use the system, as a result of their extensive abuse of the judicial process, which includes attempting to perpetrate a fraud on the Court by submitting fabricated affidavits with forged signature, suborning perjury, intimidating parties and witnesses, lying to this and other courts, lying to government agencies, refusing to answer discovery at all, and filing plagiarized briefs. The standard and applicable law were discussed in *Dewitt v. Ritz, Civil Action No. DKC 18-3202*, pp. 5-7 (D. Md. Mar 10, 2021).

> "Federal courts have the inherent power to dismiss an action with prejudice as a sanction." *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 158 (4th Cir. 2017). "This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equipment Co., 11* F.3d 450, 461 (4th Cir. 1993). "The courts' inherent powers exist to preserve the integrity of the judicial process and the resources needed to resolve disputes in an orderly and expeditious manner—two indispensable assets in any nation dedicated to the rule of law." *In re Jemsek,* 850 F.3d at 157 (*citing Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991)). "The courts must protect the integrity of the judicial process because, '[a]s soon as the process falters . . . the people are then justified in abandoning support for the system.'" *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001) (*citing Shaffer*, 11 F.3d at 457).
>
> "Mindful of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction," a court must exercise its dismissal power with restraint and "may do so only after considering several

factors[.]" *Shaffer*, 11 F.3d at 462. In evaluating whether dismissal is an appropriate sanction, the court considers: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [courts] seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id.,* at 462-63. Dismissal is justified where "a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process[.]" *Id.,* at 462; *see also Projects Mgmt. Co. v. Dyncorp Int'l LLC,* 734 F.3d 366, 373 (4th Cir. 2013). A district court's use of its inherent power to dismiss is subject to an abuse of discretion standard on review. *See Hartford Ins. Co. v. Am. Automatic Sprinkler Sys., Inc.,* 201 F.3d 538, 543-44 (4th Cir. 2000).

## V.      Legal Argument

The Court should enter a default because defendants have abused "the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process," such that the six factors outlined in *Shaffer* "weigh firmly in favor of finding involuntary dismissal [default in the present case] an appropriate sanction here." *Dewitt* at p. 29. The bottom line is that Defendants' litigation abuse and their counsel's unethical conduct have reached a point where further proceedings are useless and unfairly prejudice Plaintiffs by forcing them to continue expending time, efforts and resources to litigate in accordance with rules and standards of ethics that Defendants systematically flaunt, making a mockery of the process and of the Court's authority.

A. <u>**The first two factors -- wrongdoer culpability and client versus attorney blameworthiness -- weigh in favor of defaulting because defendants are culpable for their corrupt and deceitful acts and their counsel's filing a plagiarized brief also damaged the judicial process.**</u>

The first two factors include: (1) the degree of the wrongdoer's culpability and (2) the extent of the client's blameworthiness if the conduct was committed by his attorney. In this instance, the first two factors may be analyzed simultaneously because all wrongdoing was

committed by the client, except for the filing of the plagiarized brief which was their attorney's doing. There is clear and convincing evidence that Defendants have engaged in a widespread campaign of deceit on this Court, that includes: (a) filing a sham affidavit on which Defendants forged the signature of the affiant, Mr. Assous; (b) lying to this Court, to the Baltimore City Circuit Court and to a government agency (EPA), by giving conflicting versions of the extent of their business activities depending on their litigation needs of the moment; (c) suborning perjury from one of their victims, Mr. Avraham Dermer, for use in the pending motion for class certification; (d) tampering with a witness (Mr. Lerner) and victims (Messrs. Taub, Keyak, Gelber, and Defendants' many victims around the world whom they have surreptitiously attempted to prevent from participating in these proceedings as per the admission of their agent Itamar Shaked); and (e) failing to answer any discovery at all. Defendants Isaac and Benjamin Ouazana, acting directly or through proxies like their Israel agent, Mr. Itamar Shaked, are culpable of their corrupt acts which were intended to deceive the Court. Their attorney's filing of a plagiarized brief without any attribution to the source in violation of the Maryland rules also damaged the judicial process by wasting the Court's and Plaintiffs' time and resources with a multitude of irrelevant arguments. Mr. Palmer's unethical conduct in filing a plagiarized brief hindered the orderly administration of justice by clogging this process with unnecessary irrelevant arguments and by delaying Defendants' accountability without a good faith basis. Indeed, the filing of a lengthy brief which is copied cover to cover almost unmodified from another case with different facts and legal arguments strongly suggests "improper purpose" under an objective standard of reasonableness because the filing attorney cannot reasonably certify that the filing is well grounded in fact and law since it is largely irrelevant to the case in which it is filed. Fed. Civ. Pro. Rule 11. *See, e.g., In re Kunstler*, 914 F. 2d 505, 519 (4th Circuit

1990) (the court can determine that the motivation of the filing attorney is willful where she is

not clearly inexperienced or incompetent, by looking to the "the number and magnitude of

claims without foundation.") In this case, nearly the entire opposition filed by Defendants was

untethered to the actual factual basis and legal arguments of the motion for class certification,

suggesting "improper motive." *Id.* Therefore, consideration of the first two factors -- wrongdoer

culpability and client versus attorney blameworthiness -- weigh in favor of dismissal because

"Dismissal is justified where "a party deceives a court or abuses the process at a level that is

utterly inconsistent with the orderly administration of justice or undermines the integrity of the

process.'" *Shaffer*, 11 F.3d at 462.  Here, both the Defendants and their attorney's conduct

abused the process at a level that is "utterly inconsistent with the orderly administration of justice

or undermines the integrity of the process." *Id.*


**B.  The third and fourth factors - prejudice to the judicial process and victims - also weigh in favor of defaulting Defendants because their corrupt and deceitful acts and their counsel's filing of a plagiarized brief damaged the judicial process, made a mockery of the judicial system and weakened its credibility and ability to provide justice.**

The third and fourth factors - prejudice to the judicial process and victims - also support

dismissal. It is difficult to conceive of a situation more prejudicial to the administration of justice

than Defendants' widespread campaign of deceit on this Court, that includes: (a) filing a sham

affidavit on which Defendants forged the signature of the affiant, Mr. Assous; (b) lying to this

Court, to the Baltimore City Circuit Court and to a government agency (EPA), by giving

conflicting versions of the extent of their business activities depending on their litigation needs

of the moment; (c) suborning perjury from one of their victims, Mr. Avraham Dermer, for use in

the pending motion for class certification; (d) tampering with a witness (Mr. Lerner) and victims

(Messrs. Taub, Keyak, Gelber, and Defendants' many victims around the world whom they have

surreptitiously attempted to prevent from participating in these proceedings as per the admission

of their agent Itamar Shaked); and (e) failing to answer any discovery at all. Likewise, the dishonesty of their attorney in filing a plagiarized brief without any attribution to the source in violation of the Maryland rules also interfered with the administration of justice by wasting the Court's and Plaintiffs' time and resources with a multitude of irrelevant arguments. "Such brazen actions make a mockery of the truth-seeking objectives of the judicial system and weaken its credibility as an institution deserving of public trust. Moreover, Plaintiff's actions injure [victims, whom defendants' fraud left destitute] and the community" by unreasonably delaying closure and accountability, and has kept this litigation going for nearly 5 years, depriving some elderly victims of a resolution in their lifetime (i.e., Mrs. Henya Karniel who passed away penniless before seeing any of her fraudulently taken investment returned). *See Dewitt v. Ritz*, Civil Action No. DKC 18-3202, at p. 29 (D. Md. Mar 10, 2021). In short, Defendants have never treated this Court and the judicial process it oversees with the respect they command, and their corrupt and deceitful acts and their counsel's filing of a plagiarized brief damaged the judicial process to such a severe extent that this "undermines the public confidence in the integrity and the competence of state and federal courts." *Id.*

**C.** **The fifth factor -- availability of lesser sanctions -- also weigh in favor of defaulting defendants because the seriousness of defendants' misconduct demands application of the strongest penalty available.**

The fifth factor is the availability of sanctions other than default. The Ouazana Defendants were given at least two warnings by this Court (ECF 38, pp. 25-34; ECF 63) and opportunities to correct course in this and in related proceeding. The fact that they have not heeded the Court's warnings and instead made a mockery of the process shows that any alternative sanctions that the court may impose will not be effective at curbing their abuse. Imposing lesser sanctions such as requiring Plaintiff to pay costs and attorney's fees will be

inadequate because they likely will not be paid since Defendants have testified in Baltimore City Circuit Court that they are judgment-proof. Even if paid, these fees will do nothing to curb the Defendants' misconduct because ultimately they will be paid with money that Defendants improperly took from victims of their fraud. In short alternative sanctions, by themselves, would be inadequate. The gravity of Plaintiff's misconduct demands application of the strongest penalty available. *See Dewitt v. Ritz, supra at 31, citing Green v. Mayor & City Council of Baltimore*, 198 F.R.D. 645, 647 (D.Md. 2001) ("[N]o lesser sanction than dismissal could conceivably uphold the integrity of this Court as a place where the submission of false documents or testimony is not tolerated."). Indeed, courts have imposed dismissal as a sanction in cases involving less egregious misconduct. *See Dewitt v. Ritz, supra, citing Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992) (Upholding dismissal as a sanction where plaintiffs repeatedly refused to comply with court orders); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, (1st Cir.1989) (Affirming district court's ruling that dismissal was warranted where the complaint was based upon bogus purchase agreement); *Eppes v. H.E. Snowden*, 656 F.Supp. 1267 (E.D.Ky.1986) (dismissing counterclaim where backdated letters were produced in support of counterclaim). This case is far more egregious. Despite the Court's warnings, Defendants engaged in a widespread campaign of deceit on this Court, that includes: (a) filing a sham affidavit on which Defendants forged the signature of the affiant; (b) lying to this Court, to the Baltimore City Circuit Court and to a government agency (EPA); (c) suborning perjury from one of their victims, Mr. Avraham Dermer, for use in the pending motion for class certification; (d) tampering with a witness (Mr. Lerner) and victims (Messrs. Taub, Keyak, Gelber, and Defendants' many victims around the world whom they have surreptitiously attempted to prevent from participating in these proceedings as per the admission of their agent Itamar Shaked); and (e) failing to answer any

discovery at all. Likewise, the dishonesty of their attorney in filing a plagiarized brief is beyond contention. In short, nothing less than the sanction of Default is appropriate.

**D.  The sixth factor – the public interest -- also weighs in favor of defaulting defendants because the nature of defendants' misconduct would compromise the public's confidence in the courts' ability to adjudicate disputes unless this conduct is deterred.**

The sixth and final factor, the public interest, also supports defaulting Defendants. "There is a strong public interest in preserving the public confidence in the courts' ability to adjudicate disputes fairly on the basis of facts and legitimate evidence, not on perjured testimony and forged evidence. Our entire judicial system is premised on such values.  [Default] is also in the public interest because it deters others from engaging in similar misconduct by sending the clear message to potential offenders that attempts to game the system will not be tolerated." *See Dewitt v. Ritz*, *supra,* at 32.

## VI.  Conclusion

The Court should thus, default the Ouazanas despite "the strong policy favoring the disposition of cases on the merits."  The court should find that the Ouazanas' abuse of the judicial process in this case was so extreme as to "forfeit [their] right to use the process." *Rangarajan v. Johns Hopkins Univ*., 917 F.3d 218, 229 (4th Cir.), cert. denied, 139 S. Ct. 2762, 204 L. Ed. 2d 1137 (2019).

Respectfully submitted this April 9, 2024,

MIZENE, PLLC


By:_____//s//_____

Jamil Zouaoui (D.C. Bar #431952)

2911 Arizona Avenue, NW

Washington, DC 20016

Telephone: (202) 670-0529

jzouaoui@mizene.us

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this Tuesday, April 9, 2024, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all parties or their attorneys of record.

MIZENE, PLLC

By: _____//s//_____

                Jamil Zouaoui (D.C. Bar #431952)

                2911 Arizona Avenue, NW

                Washington, DC 20016

                Telephone: (202) 670-0529

                jzouaoui@mizene.us

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GERARD Layani, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ISAAC OUAZANA, et a.<br><br>Defendants. | Case No. 1:20-cv-00420-SAG |

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR SANCTION OF DEFAULT

This matter having come before the Court upon Plaintiffs' motion sanction of default, and the Court having considered this Motion, any Opposition thereto and the Record in its entirety, it is by this Court, this ___ day of ____, 2024;

ORDERED that the instant Motion be and hereby is GRANTED.

AND IT IS SO ORDERED

_____

Hon. Stephanie A. Gallagher, U.S. District Judge

24