IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **GERARD LAYANI,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | |
| v. | * | Civil Case No. SAG-20-0420 |
| | * | |
| **ISAAC OUAZANA,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

A collection of corporate and individual plaintiffs ("Plaintiffs") filed this action more than five years ago, in February of 2020, alleging that Defendants Isaac and Benjamin Ouazana, along with a group of limited liability corporations ("LLCs") they control, committed wrongdoing in connection with monies Plaintiffs invested in their real estate endeavors. The version of Plaintiffs' complaint presently pending before this Court is a 221-page, thirteen-count Amended Complaint filed in 2022, which has been narrowed only slightly by this Court's subsequent rulings. ECF 59. At present, eleven counts are scheduled to proceed to trial on September 2, 2025, including claims of conspiracy to commit racketeering, fraud, breach of contract, and breach of fiduciary duty, among other causes of action.

In the earlier stages of this case, after resolving a lengthy series of motions to dismiss, this Court issued a scheduling order, ECF 123, which set a December 11, 2023 deadline for addition of parties or amendment of pleadings. The parties proceeded through discovery and filed their summary judgment motions, which the parties finished briefing on November 18, 2024. ECF 268. This Court resolved the summary judgment motions on December 12, 2024. ECF 274, 275. Because counts remained for disposition after the summary judgment motions were decided, this

Court issued a pretrial scheduling order on January 3, 2025. ECF 278. Since the five-year trajectory of this case has taught this Court that the parties have a tendency to 1) disregard certain Court practices and instructions and 2) present a plethora of issues requiring Court involvement, this Court required that motions in limine, along with joint jury instructions, joint voir dire proposals, a joint proposed verdict form and a joint pretrial order be submitted on or before May 16, 2025, to allow ample time for this Court to resolve disputes before the September, 2025 trial.[1] *Id.* Defendants filed their proposed version of the jury instructions (attached to the parties' joint submission) at 2:39 pm on May 16, 2025. ECF 281. About eight hours later, Plaintiffs filed a Motion for Leave to Amend, ECF 285. The proposed amended complaint adds a new count for civil conspiracy. ECF 285-1.

This Court has reviewed the motion for leave to amend, along with the opposition and the reply. ECF 286, 288. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated herein, Plaintiff's motion will be denied.[2]

I. ANALYSIS

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or

---

[1] This Court's suspicion proved prescient, as the parties disregarded its express instruction that they submit a joint pretrial order, joint voir dire, joint verdict sheet, and joint jury instructions (customarily, as single documents with any disputed portions indicated by redline). ECF 278 ("Any voir dire questions, jury instructions, or special verdict forms upon which the parties cannot agree on should still be submitted in joint form, clearly reflecting each party's position where they diverge."). Instead, the parties filed a single "joint" docket entry but attached entirely separate "Plaintiff versions" and "Defendant versions" of the pertinent documents, ECF 281, which is the functional equivalent of separate, not joint, filings. The parties have been instructed to confer on joint submissions and to refile them with the Court.

[2] The parties have filed several other pretrial motions and motions in limine, which this Court will address at a later date.

the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

However, because Plaintiffs are seeking leave to amend to add a new claim for relief almost eighteen months after the deadline for amendment provided by the scheduling order, the liberal Rule 15 standard must be weighed against the requirements of Federal Rule of Civil Procedure 16(b)(4), which reads, "A schedule may be modified only for good cause and with the judge's consent."

Plaintiffs' motion must be denied for two separate reasons. First, their motion for leave to amend was filed nearly eighteen months after the deadline for joinder of additional parties or amendment to the pleadings, well after the end of discovery and the adjudication of summary judgment motions, and on the same date as the parties' submission of their proposed trial materials. Plaintiffs have failed to establish good cause for their grossly belated attempt to amend and have not shown an exercise of diligence. Second, the belated proposed amendment would cause prejudice to Defendants and would therefore be improper even under the more liberal Rule 15 standard.

As noted above, the operative scheduling order in this case provided a December 11, 2023 deadline for the joinder of additional parties or the amendment of pleadings. ECF 123. Plaintiffs

3

did not file the instant motion for leave to amend until May 16, 2025. ECF 285. As such, Plaintiffs must satisfy the good cause standard set forth in Rule 16(b)(4) before this Court will find leave to amend under Rule 15 to be appropriate.

Other cases have described the existing tension between these two federal rules. In *Nourison Rug Corp. v. Parvizian*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. 535 F.3d 295, 297 (4th Cir. 2008). The Fourth Circuit noted that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4), before the court would consider the more liberal standard for amendment of a pleading in Rule 15(a)(2). *Id.*; *see also Cook v. Howard*, 484 Fed. App'x. 805, 814–15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

To establish good cause, the party seeking to amend the scheduling order must "show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Id.* at 815 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2 (3d ed. 2010)); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (4th Cir. 2004) ("The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant. Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.' . . . 'If [the moving] party was not diligent, the inquiry should end.'" (citations and emphasis omitted)); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*,

190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (internal citations and quotations omitted)).

Applying these standards, Plaintiffs have failed to establish good cause for their tardy motion for leave to amend. The explanations they proffer do not make logical sense and do not explain their lack of diligence. According to Plaintiffs, they learned, during depositions in July and August, 2024, that the Ouazanas' LLCs did not operate separately and independently from one another. Even if that fact was necessary to assert a civil conspiracy claim (which this Court doubts, given the broad description of the civil conspiracy claim Plaintiffs now try to assert and that most of the objects and overt acts have been part of this case since its inception), Plaintiffs do not explain why they failed to promptly seek leave to amend right after those depositions, nine or more months ago and before summary judgment briefing was completed. Plaintiffs also argue that they learned in November, 2024 that Defendants had destroyed certain records relating to their investments back in 2017 when the relationship ended. But that fact, while troubling, seems entirely unconnected to the proposed civil conspiracy claim. In fact, the proposed new count makes no reference to destruction of records. And, again, even if Plaintiffs did need to know about the destruction of records to mount a civil conspiracy claim, they offer no good cause why they could not have acted diligently to attempt to amend the complaint when they learned about the destroyed records in November, 2024, instead of waiting until May, 2025.

In attempting to show "lack of prejudice" to the Defendants, Plaintiffs instead demonstrate why they have no good cause. Plaintiffs suggest that no additional discovery would be needed for their civil conspiracy claim because, "[t]he proposed amendment does not introduce new factual

5

allegations; it arises from the same core facts already alleged in support of the existing RICO conspiracy claim." ECF 288. Plaintiffs have therefore boxed themselves in: If the newly proposed claim rests on newly discovered facts and evidence, then Defendants would be entitled to more discovery. If it does not, and only rests on the same facts already known to the parties earlier in the case, then there is no reason Plaintiffs could not have amended to add this legal theory far sooner.

Based on the timing here, it appears likely that Defendants' (somewhat inexplicable) decision to include a Maryland civil conspiracy instruction in their proposed jury instructions first alerted Plaintiffs' counsel to the fact that it may have been a plausible claim, resulting in this belated attempt to amend.[3] But counsel's failure to think of a potentially viable cause of action until the other side mentions it is not good cause to add a new count just weeks before trial begins and after documents intended for use at trial have been drafted and submitted to the Court. *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590 (D. Md. 2018) (finding that the defendant's argument that it "had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence"). Plaintiffs' unconnected allegations about discovery stonewalling do not support his position, because he has not linked Defendants' conduct during discovery to his own lack of diligence in seeking leave to amend.

Accordingly, under these circumstances, this Court finds that Plaintiffs have demonstrated no good cause for filing their motion for leave to amend the complaint almost eighteen months after the deadline provided in the Scheduling Order, and at least six months after their discovery

---

[3] This Court can only assume that Defendants included the Maryland civil conspiracy instruction in an attempt to provide a suitable instruction for civil RICO conspiracy. However, it will be appropriate to use an instruction based on the applicable federal statute, not state law.

of facts they now suggest are relevant. And where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address the remaining Rule 15(a) factors. *See, e.g.*, *Nourison Rug*, 535 F.3d at 299 (declining to address the Rule 15(a) factors after upholding the trial court's finding of no good cause under Rule 16(b)).

This Court alternatively notes, however, that if the Rule 15(a) factors were considered, there is no doubt that the Defendants could establish that they would suffer prejudice from this belated amendment. "Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "[t]he party opposing amendment." *Atlantic Bulk Carrier Corp. v. Milan Exp. Co.*, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). As the Fourth Circuit explained in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . .'" (quoting *Laber v. Harvey*, 438 F.3d 423, 427 (4th Cir. 2011)) (alteration in *Laber*).

Prejudice can be found "where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted). In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any

discovery has occurred." *Laber*, 438 F.3d at 427. Thus, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

Although it appears that the parties may have informally agreed to take certain discovery after the deadline without seeking leave of court, discovery is now well-completed and final trial preparation is underway. As this Court noted above, it is not entirely clear from Plaintiffs' own contentions whether the new civil conspiracy claim would require additional fact discovery, but it certainly might. Either way, Defendants would at least have to revise the submissions they have already submitted: the pretrial order, proposed jury instructions, proposed voir dire, and proposed jury verdict form would all have to be altered to incorporate this new count into the already overly complicated legal claims presented in this case. It is clear, then, that Defendants would suffer prejudice from the late-stage amendment, providing an independent basis to deny leave to amend even under the more lenient Rule 15 standard. Thus, this Court need not address the futility of the proposed claims and will deny the requested leave to amend.

## II.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Leave to Amend, ECF 285, will be DENIED. A separate Order follows.

Dated: June 3, 2025                                  /s/
                                         Stephanie A. Gallagher
                                         United States District Judge