```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
```

|   |   |
|---|---|
| GERARD LAYANI, et al. | : |
|  | : |
| v. | : Civil Action No. DKC 20-420 |
|  | : |
| BENJAMIN S. OUAZANA, et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the renewed motion for judgment pursuant to Fed.R.Civ.P. 50(b)(3) filed by Defendants I&B Capital Investments LLC, Benjamin S. Ouazana, Isaac Ouazana, WAZ-Brothers, LLC, WAZ-Investments, LLC, and WAZ-Management, LLC ("Defendants"). (ECF No. 352). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for judgment will be denied.

I.  **Background**

The essential facts underlying this case are as follows:

> In this long-enduring dispute over Baltimore rental and investment properties, Plaintiffs Gerard Layani, Yehuda Ragones, Isaac Krausz, Yonnason Keyak, Devora Keyak, Yosef Keyak, RDNA Investments LLC, Kandy, LLC, 4802 Frankford Ave., LLC, and Britt Investment Baltimore (collectively, "Plaintiffs") allege that Defendants Benjamin Ouazana, Isaac Ouazana, I&B Capital Investments LLC, WAZ Brothers LLC, WAZ-Investments, LLC, and WAZ-Management LLC (collectively, "Defendants") engaged in a wide-ranging scheme to defraud

>           investors via the sale and management of
>           various properties in Baltimore City.

(ECF No. 274, at 1). Several district and magistrate judges have endeavored to manage this unwieldy dispute. Judge Ellen Hollander, to whom this case was initially assigned, previously provided an extensive discussion of the facts presented in the initial complaint, (ECF No. 38, at 4-23), and a further summation of the facts is unnecessary at this time.[1] Since it was filed in February 2020, (ECF No. 1), this case has accumulated a voluminous record. The operative second amended complaint contained thirteen counts against Defendants, including state law tort and contract claims, as well as two counts under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"). (*See* ECF No. 59, at 4). Prior to trial, the scope of the complaint was "narrowed only slightly by this Court's subsequent rulings." (ECF No. 297, at 1).

This court presided over an eleven-day jury trial in September 2025. (*See* ECF No. 347). During trial, certain claims were abandoned by Plaintiffs as redundant, and others were dismissed or resolved against Plaintiffs by the court at the close of the

---

[1] In later ruling on the parties' earlier motions for summary judgment, Judge Stephanie Gallagher omitted a retelling of the facts "because the briefing d[id] not provide record citations sufficient for it to construct one without Herculean effort." (ECF No. 274, at 3 n.1) (citing *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)).

evidence (including all claims under RICO). Some state law claims for fraud, breach of contract, unjust enrichment, and breach of fiduciary duty were submitted to the jury.

At the close of the Plaintiffs' case, Defendants filed a written motion for judgment under Fed.R.Civ.P. 50(a). (ECF No. 342). That motion challenged the sufficiency of the evidence for the RICO claims, asserted a statute of frauds defense to the contract claims, asserted that Plaintiffs had failed to present evidence of fair market or rental values to support claims for damages, and argued that the tort claims were barred by Maryland's economic loss doctrine. Orally the next morning, Counsel raised an additional issue concerning RICO and domestic, versus foreign, injuries.

The court deferred any resolution of the motion and opted to have the parties conclude presentation of evidence.

Once presentation of evidence was concluded, the court required Plaintiffs to identify with precision the predicate acts stated in the amended complaint for any potentially viable RICO claim, and then to describe the evidence supporting each element for each Plaintiff and each Defendant. That effort was minimally successful.

At the ensuing conference, counsel for Plaintiffs attempted to specify the predicate acts for which admissible and sufficient

3

evidence had been produced. At the end of that exercise, the court concluded that there was insufficient evidence to constitute a pattern of activity as necessary to proceed with the RICO claims and all federal RICO claims were dismissed. The court also culled the purported false statements and concealments that were included in the amended complaint to a list that was manageable, albeit marginally, to support the fraud claims.

Counsel for Plaintiffs essentially conceded that there were no claims for breach of contract for the acquisition packages because evidence of specific terms of a contract to purchase any of the properties was missing. No claim for a breach of contract for the acquisition of a property went to the jury. Plaintiffs did insist that the management or operating agreements were specifically definite, regarding failure to report, to pay government agencies, and to remit rents. Ultimately, the court ruled that one plaintiff, Yehuda Ragones, had testified that rents were not paid over when they should have been for his properties, thus providing evidence that at least one defendant breached a management agreement to remit rents. In addition, a single property for Plaintiffs Gerard Layani and Britt Investment Baltimore was also allowed to proceed on that theory. Separate, but limited, claims for breach of contract were submitted to the

4

jury for the failure to report, failure to pay government agencies, and failure to remit rent.

The court also sent a limited set of the unjust enrichment and breach of fiduciary duty claims to the jury. While the jury deliberated for about a day, the jurors were unable to reach a verdict. The court declared a mistrial.[2]

Defendants timely moved to renew their motion for judgment on September 20, 2025. (ECF No. 352). Plaintiffs responded to the motion on October 6, 2025. (ECF No. 354). Defendants replied in support of their motion on October 15, 2025. (ECF No. 356).

## II. Standard of Review

Fed.R.Civ.P. 50 governs motions for judgment as a matter of law during or after a jury trial. Rule 50(a) governs motions made "at any time before the case is submitted to the jury," and Rule 50(b) governs motions renewed after trial if the court did not grant the Rule 50(a) motion. Fed.R.Civ.P. 50. "A motion under Rule 50(b) 'assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim.'" *Harris v. Wormuth*, 669 F.Supp.3d 477, 499 (D.Md. 2023)(quoting *Belk, Inc. v. Meyer Corp.*,

---

[2] The jury instructions and verdict sheet were not filed on the docket, and an official transcript has not been prepared. The court will attach the jury instructions and verdict sheet to this opinion.

679 F.3d 146, 155 (4th Cir. 2012)).  The court's role is not to take the place of the factfinder:

> When conducting a sufficiency-of-the-evidence inquiry for a post-trial Rule 50(b) motion we do not "weigh the plaintiff's evidence against that offered by the defendant." *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 298 (4th Cir. 1984).  Instead, we take the evidence in the most favorable light to the party opposing the motion and ask whether a reasonable jury could have arrived at its conclusion.

*Wiener v. AXA Equitable Life Ins. Co.*, 153 F.4th 413, 418 (4th Cir. 2025).  A mistrial does not, on its own, foreclose the possibility of judgment as a matter of law. *DeMaine v. Bank One, Akron, N.A.*, 904 F.2d 219, 221 (4th Cir. 1990).

**III. Analysis**

Defendants raise arguments in their Rule 50(b) motion that were not included in the written Rule 50(a) motion at the close of Plaintiffs' case, which mostly precludes their review. Defendants' motion also suffers from a lack of clarity throughout, including in failing to identify which specific claims are meant to be foreclosed by each argument.  Ultimately, these problems doom Defendants' motion.

**A.   Raising Arguments in the Rule 50(a) Motion**

"Except in circumstances necessary 'to avoid manifest injustice to the moving party,' courts may not consider arguments under Rule 50(b) that the moving party failed to preserve under

6

Rule 50(a)." *Wallace v. Poulos*, 861 F.Supp.2d 587, 608 (D.Md. 2012) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2ᵈ Cir. 1993)).  Defendants filed a written motion for judgment under Rule 50(a) before the case was submitted to the jury, (ECF No. 342), and provided limited additional argument orally.  After the jury failed to reach a verdict, Defendants filed a renewed motion for judgment under Rule 50(b).  (ECF No. 352).  The renewed motion for judgment makes four arguments.  Two arguments – that the Plaintiffs did not provide evidence of fair market value, (ECF No. 352-1, at 3), and that Plaintiffs' claims are barred by the Statute of Frauds, (*Id.* at 10) – were raised in the earlier motion and will be considered.  (ECF No. 342-1, at 6, 10).  The other two arguments – that many of Plaintiffs' claims are barred by Maryland's statute of limitations, (ECF No. 352-1, at 9), and that several Plaintiffs do not have standing to bring their claims, (*Id.* at 14) – were not raised in the earlier written motion under Rule 50(a), and were only hinted at orally.³  The court will decline

---

³ In their reply brief, Defendants seem to make one new argument that was not included in either their Rule 50(a) motion or their Rule 50(b) motion, which says Plaintiffs "failed to produce any tax returns, bank records, title company records, cancelled checks, wire transmittals, or cash exchange receipts to support any of the claimed damages in this case." (ECF No. 356, at 8).  As this argument was not raised in the initial motion for judgment, the court will not consider it now.

7

to consider the first argument but will consider the second, as it implicates the justiciability of the case.

The only claims that went to the jury were fraud, breach of contract, breach of fiduciary duty, and unjust enrichment.

First, in their renewed motion for judgment, Defendants argue that many of Plaintiffs' claims are barred by Maryland's statute of limitations.  (ECF No. 352-1, at 9-10).  Defendants did not make this argument in their earlier written Rule 50(a) motion; rather, they argued that several of the claims were barred by the statute of limitations period for federal RICO enterprise claims.[4] (ECF No. 342-1, at 17).  These arguments are not interchangeable; the federal and state statutes of limitations have different lengths and pertain to different claims.  Counsel for Defendants did allude briefly to a statute of limitations defense for some of the fraud claims relating to some of the properties at the charging conference but did not elucidate at any point.

Despite Defendants' failure to assert this defense adequately at the motion for judgment stage, Plaintiffs respond substantively, and Defendants did not reply. There is no risk of manifest injustice to the moving party in not considering this

---

[4] None of the federal RICO claims were submitted to the jury because the court granted judgment based on the lack of evidence for necessary elements.

8

argument more fully now.  Defendants have had over five years of litigation to argue the affirmative defense that the statute of limitations should bar some or all of the state law claims, including at the summary judgment stage.  (ECF No. 274, at 5-7). They did not seek a jury instruction on the issue.

Defendants also argue in their renewed motion for judgment that Plaintiffs Ragones and Krausz[5] have no standing to bring claims for two specific properties.   (ECF No. 352-1, at 14). Defendants did not raise this argument in their initial motion. Contrary to Plaintiffs' assertions, (ECF No. 354, at 19), however, the argument is not waived.  Because the doctrine of standing strikes at the power of the court to hear the case, "the issue of standing may be raised at any time or *sua sponte* by the Court." *Rock Spring Plaza, LLC v. Invs. Warranty of Am., LLC*, No. 20-cv-01502-JRR, 2025 WL 1504850, at *21 (D.Md. May 27, 2025) (citing *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020)).

**B.  Standing for Plaintiffs Ragones and Krausz**

Defendants argue that Plaintiffs Ragones and Krausz do not have standing to bring claims for the properties at 1109 N.

---

[5] Defendants repeatedly refer to Plaintiff "Kraus" in their motion.  (ECF No. 352-1, at 14).  As there is no Plaintiff by that name, the court presumes that Defendants are referring to Plaintiff Issac Krausz.

9

Lyndhurst or 3022 E. Northern Parkway, respectively.[6] (ECF No. 352-1, at 14). In support of their argument, they assert that "Ragones never had an ownership interest in 1109 Lyndhurst," and "Kraus[z] has no standing to sue Defendants after the lender rejected an offer . . . to which Kraus[z] contributed to purchase 3022 E. Northern Parkway." (*Id.*).

Defendants' assertion does not implicate standing. "To establish an injury sufficient to confer standing to bring suit under Article III, a plaintiff must plausibly allege: (1) 'an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Buscemi*, 964 F.3d at 258 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Defendants do not argue that any of these parameters are not met; rather, Defendants argue that the relevant Plaintiffs never had an ownership interest in the properties, (ECF No. 352-1, at 14). As Plaintiffs note, Defendants "improperly conflate[] the notion of a plaintiff's standing to pursue claims with the identity of the title owner of properties." (ECF No. 354, at 19). Standing to sue for the surviving claims does not rely on ownership, and

---

[6] Curiously, in Defendants' reply, they only argue that Plaintiff Ragones lacks standing for 1109 N. Lyndhurst with no mention of Plaintiff Krausz or the second property. (ECF No. 356, at 16). The omission is not explained.

Defendants provide no other reason that the Plaintiffs lack standing. The court will deny judgment on this point.

### C. Fair Market Value and Fair Market Rental Value

Defendants argue that Plaintiffs' failure to present evidence of the fair market value for the properties at issue forecloses any finding of damages. (ECF No. 352-1, at 5). Plaintiffs counter that the "jury had before it sufficient evidence of actual losses from which to calculate damages without resort to hypothetical 'fair market value' appraisals." (ECF No. 354, at 7).

Defendants' argument fails because they have made no effort to identify the specific claims that should be defeated by the omission of this single piece of evidence. Defendants only barely narrow their argument in the reply, where they state that "Plaintiffs failed to meet their burden of proof in presenting breach of contract or fraud damages under Maryland law." (ECF No. 356, at 2). This case involves multiple defendants, multiple plaintiffs, and multiple properties. While it is possible that Defendants' argument is applicable to some individual claims, a blanket assertion that all fraud and breach of contract claims must fail for lack of fair market value evidence is flatly incorrect. To give just one example, Maryland law allows for nominal damages in breach of contract actions, even when a plaintiff has not shown actual damages. *Ambling Mgmt. Co. v. Univ.*

11

*View Partners, LLC*, 581 F.Supp.2d 706, 718 (D.Md. 2008) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *Hooton v. Kenneth B. Mumaw Plumbing & Heating Co., Inc.*, 271 Md. 565, 572 (1974)). As Judge Gallagher noted during the summary judgment phase:

> Defendants have not explained which of Plaintiffs' claims should fall based on those evidentiary deficiencies, nor have they identified the elements of the claims at issue. Defendants cannot prevail by merely gesturing toward a generalized lack of evidence without making specific arguments as to why Plaintiffs' claims fail as a matter of law.

(ECF No. 274, at 9).

Defendants also argue that a measure of fair rental market value is an essential part of any finding of damages for the loss of rental income. (ECF No. 352-1, at 8). They provide no case law supporting this assertion, and once again do not identify which claims this argument is seeking to foreclose. (*Id.* at 8-9). Defendants try to argue that judgment in their favor is warranted because Plaintiffs did not present "any credible testimony or evidence . . . supporting Plaintiffs' burden to present evidence that they did not receive net rental payments to which they were entitled." (*Id.* at 8). It is the jury's role to determine credibility, not that of the Defendants or this court. *See Harris*, 669 F.Supp.3d at 504. Defendants' motion is denied on this ground.

12

### D. Statute of Frauds

Finally, Defendants argue that Plaintiffs' claims are barred as a matter of law by Maryland's Statute of Frauds. Under Maryland law, "[n]o action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him." Md. Code Ann., Real Prop. § 5-104. According to Defendants, this provision "applies to agreements involving real property, including oral agreements to purchase or manage investment rental properties." (ECF No. 352-1, at 11). Defendants assert that the "only written contract introduced by Plaintiffs was the Management Agreement of Yosef Keyak signed by Isaac Ouzana." (*Id*.). Without additional written contracts, they argue, "Plaintiffs cannot satisfy the requirements of Maryland's Statute of Frauds, and their claims related to these alleged contracts must fail." (*Id.* at 13). Plaintiffs counter, in part, that "[t]he property management agreements at issue here were service contracts, not conveyances of real property," so the Statute of Frauds does not apply.[7] (ECF No. 354, at 16).

---

[7] The court was unable to find any record of three cases cited by Plaintiffs in their response. (ECF No. 354, at 14-16). Litigants are reminded that cases cited in briefs submitted to the

Once again, Defendants make their blanket argument untethered to any specific claim. Defendants assert that any "claims related to these alleged contracts," previously identified as contracts "for the sale or management of real property," must fail. (ECF No. 352-1, at 13). Nearly every claim is in some way related to agreements between the Plaintiffs and Defendants "for the sale or management of real property." It is not the role of this court to see if Defendants may have a point on any of the nearly fifty claims sent to the jury.

The motion will be denied on this ground.

## IV. Conclusion

For the foregoing reasons, Defendants' Rule 50 motion will be denied. A separate order will follow. After the parties have had a chance to review this opinion, the court will convene a status/scheduling conference. Among the topics to be discussed will be whether the claims should be severed for trial under Fed.R.Civ.P. 42(b) and grouped into four sets of Plaintiffs. Now that the federal RICO claims are no longer in the case, the remaining state law claims are particular to each set of Plaintiffs.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge

---

court must be legitimate cases that support their proposition. See Fed.R.Civ.P. 11(b)(2).